UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARTY R. DODSON, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL S. ASTRUE, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:12-CV-109<br>Collier/Carter |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Summary Judgment (Doc. 9) and Defendant's Motion for Summary Judgment (Doc. 11).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 50 years old as of his February 28, 2008, alleged onset date and 51 years old as of the ALJ's July 16, 2010, decision (Tr. 85, 89). He has an eighth grade education, is able to communicate in English, and had past relevant work experience as a local truck driver and semi-truck driver (Tr. 15, 114, 116, 118-19).

## Applications for Benefits

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in January 2009, alleging an onset date of February 28, 2008 (Tr. 10, 85, 89). The applications were denied initially and on reconsideration (Tr. 36-39). Plaintiff then requested a hearing before an ALJ, which was held on July 13, 2010 (Tr. 20-29). In a July 16, 2010, decision, the ALJ found Plaintiff was not disabled (Tr. 7-16). The Appeals Council denied Plaintiff's request for review on September 19, 2011 (Tr. 1-6) and this case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383 (c)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step.

2

20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 28, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq*).

3

3. The claimant has the following severe impairment: low back pain secondary to degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

6. The claimant is capable of performing past relevant work as a local truck driver, medium exertional level, unskilled (SVP-2); and semi-truck driver, medium, semiskilled (SVP-4). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 12-16).

## Issue Presented

i. Whether the Commissioner's finding of a non-severe mental impairment is supported by substantial evidence.

ii. Whether the Commissioner's RFC finding was supported by substantial evidence.

iii. Whether the Commissioner's credibility determination is supported by substantial evidence.

## Relevant Facts

Plaintiff was treated with his primary care physician Dr. Chandler from 2005 through 2010. As Plaintiff concedes, Dr. Chandler's notes are very difficult to decipher. They lack any significant detail. They simply repeat the presence of chronic back pain and chronic anxiety. Treatment recommended was diet, exercise and medication. An MRI was performed on August

4

24, 2007. Findings included L4-L5 disc space markedly narrowed with disc desiccation and anterior disc bulge, a broad-based posterior disc bulges centered to the left of midline, extending into the left lateral recess. There was minimal contact on the exiting left L4 nerve root in the descending left L5 nerve root. Impression was, transitional lumbosacral L5 vertebra, marked chronic degenerative disc changes and facet arthropathy at L4-5 with asymmetric posterolateral disc protrusion and mild nerve root impingement on the left, and interspinous degenerative changes associated with reactive bone marrow signal at L2-L3 (Tr. 182). Plaintiff continued to try to be treated by Dr. Chandler.

Plaintiff stopped working on February 28, 2008, and continued treatment with Dr. Chandler for chronic low back pain and anxiety. A September 4, 2008 progress note indicates Dr. Chandler prescribed Plaintiff narcotic pain medications Lortab and Xanax for anxiety (Tr. 174).

After applying for disability, Plaintiff was sent by DDS to Dr. Donita Keown for a lumbar spine range of motion examination. The March 20, 2009 examination revealed the following: the thoracolumbar column had no spasm, no asymmetry and no scoliosis. Dorsiflexion was 85 degrees, extension 15 degrees, left lateral flexion 20 degrees and right lateral flexion 25 degrees. Plaintiff was able to lift on toes and heels briefly, held one-foot stand without weakness, performed unremarkable tandem steps, and a negative Romberg exam. Plaintiff used no assistive devices and had no difficulties moving from seated to standing (Tr. 185).

The record also includes an April 6, 2009 Physical Residual Functional Capacity Assessment of Dr. Reeta Misra who reviewed the medical reports of Dr. Chandler from April 19, 2005 to September 4, 2008, including the MRI of the lumbar spine of August 24, 2007. She also

5

reviewed the March 20, 2009 range of motion examination of the lumbar spine. Based on the review, the non-examining/non-treating DDS physician completed a PRFC form which assessed Plaintiff could perform medium work (Tr. 186-194).

On June 22, 2009, David Caye performed a Psychological Evaluation of the Plaintiff. Mr. Caye thought it significant that the claimant did not bring his medications with him to the evaluation. Mr. Caye observed that Plaintiff's "overall level of functioning appeared to be restricted secondary to sedation." Plaintiff reported that currently, on medicine, he was doing fairly well but was still withdrawn, had low self-esteem and no interest in doing things. Mr. Caye in his summary and conclusions noted Plaintiff, during the office visit, had an impaired state of awareness, equilibrium poor, gait unsteady, speech slurred, stuttering evident, sedation ongoing, psychomotor activity restricted, eye contact inefficient and alertness impaired to the point of multiple questions having to be repeated to obtain a response. Mr. Caye ultimately concluded that Mr. Dodson was mildly to moderately restricted secondary to altered state of awareness. Concentration and recall were mildly restricted for similar reasons. Social interaction patterns appeared mildly to moderately restricted, problem solving skills were minimally to mildly restricted, and adaptation was not restricted (Tr. 197-201).

On August 25, 2009, Victor L. O'Bryan, Ph.D. completed a psychiatric review technique, and concluded that the claimant needed an RFC Assessment based on "Chronic Anxiety" disorder (Tr. 203). Dr. O'Bryan then completed a MRFC Assessment. In the Summary Conclusions section of his report he found moderate limitations in the claimant's: (i) ability to maintain attention and concentration for extended periods; (ii) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, (iii)

6

ability to respond appropriately to changes in the work setting. In his Functional Capacity Assessment, Dr. O'Bryan concluded Plaintiff could do detailed work, had limited but adequate concentration, persistence and pace, and could adapt to moderate levels of stress and change (Tr. 209).

### Hearing Testimony

At the hearing, Plaintiff was represented by counsel. Plaintiff testified he was limited to sitting, standing, and walking for about 20-30 minutes at one time. He also talked about attempting to perform yard work, but contended he is only able to perform those activities for 20-30 minutes, and then he had to rest for about 30 minutes to recover from the increase in pain. Plaintiff testified about his mental limitations, stating: "I like to stay at home. I don't want to be around others."(Tr. 22-25). He testified about attempting to return to work, but said he was unsuccessful in doing so. The ALJ found such work to be an unsuccessful work attempt (Tr. 12).

### Analysis

#### The Mental Impairment:

Plaintiff first argues the finding that Plaintiff's mental impairment was non-severe is not supported by substantial evidence. Plaintiff argues that the findings of Dr. O'Bryan, that an "RFC Assessment" was necessary, shows the mental impairment was severe. Plaintiff contends the ALJ erred when he did not include anxiety as a severe impairment. Plaintiff's contention lacks merit because the ALJ found he had at least one severe impairment and then considered his severe and non-severe impairments at the subsequent steps in the evaluative process (Tr. 16-21), which is all the ALJ was required to do.

Because the ALJ found Plaintiff had some severe impairments, the specific impairments he listed in his step two finding are irrelevant. See Maziarz v. Sec'y of Health & Human Servs.,

837 F.2d 240, 244 (6th Cir. 1987) (noting failure to find particular impairment severe was not reversible error because ALJ found other severe impairments); see also McGlothin v. Comm'r of Soc. Sec., 299 Fed. App'x 516, 522 (6th Cir. 2008) (noting it was "legally irrelevant" that ALJ found some impairments not severe because ALJ found claimant had severe impairments and completed evaluation process). The ALJ proceeded with the other steps of the sequential evaluation process and specifically considered Plaintiff's anxiety in assessing his RFC (Tr. 14-15). The ALJ addressed his mental impairment of anxiety but found it did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and thus concluded it was non-severe (Tr. 13-14). Because the ALJ found Plaintiff had at least one severe impairment and then considered his severe and non-severe impairments in the subsequent steps, it became "legally irrelevant" that his anxiety was determined to be non-severe. See McGlothin, 299 Fed. App'x at 522 (6th Cir. 2008) (unpublished disposition). Therefore, the ALJ did not err at step two of the sequential evaluation.

The Commissioner's RFC Finding:

Plaintiff next argues the RFC finding is not supported by substantial evidence because it fails to address the Plaintiff's non-exertional mental limitations. I disagree because I conclude the ALJ did discuss and consider the mental limitations alleged, but found them not to be severe. As the ALJ explained, the medical evidence of record showed only that Plaintiff's primary care physician, Dr. Frank Chandler, prescribed medication for chronic anxiety in five visits in February and September 2008, March and September 2009, and March 2010 (Tr. 13, 174-75, 196, 222-23). The ALJ also referred to the consultative mental status exam in June 2009 with senior psychological examiner David Caye, M.S., which reflected no history of mental health treatment or any diagnosis of anxiety (Tr. 13, 15, 198). Plaintiff also reported he was "doing

8

fairly well" on his current medications in this evaluation and did not show anxious symptoms, though he did appear to be sedated (Tr. 198-99). Mr. Caye assessed Plaintiff with a flat affect and mildly blunted mood, but also noted Plaintiff had generally unremarkable mental status testing, reflecting cognitive skills in the low average range (Tr. 199-200). Mr. Caye opined Plaintiff had mild to moderate mental restrictions, but attributed most of the limitations he assessed to the "altered state." Plaintiff showed signs at the evaluation of medication use and possible medication abuse (Tr. 15, 200-01).

Further, Plaintiff failed to show his mental condition, regardless of whether it was labeled severe or non-severe, caused additional limitations on his ability to work. Plaintiff relies on the Psychiatric Review Technique ("PRT") finding and mental RFC form of the state agency reviewing psychiatrist Victor O'Bryan, Ph.D. to support his position that his mental condition was severe (Doc. 10, Plaintiff's Brief at 7). I do not conclude those documents provide that support. While Dr. O'Bryan indicated through his PRT finding responses that Plaintiff had a severe impairment, his mental RFC assessment noted only that Plaintiff denied any problems, could "do detailed work," had "limited, but adequate" concentration, persistence, and pace, and could "adapt to moderate levels of stress and change" (Tr. 203, 219). Even assuming these responses constituted an assessment of any meaningful functional mental limitations, the record as a whole, including Plaintiff's consultative exam and treatment notes, failed to support any significant mental limitations (Tr. 13, 15, 174-75, 196, 198-201, 222-23).

Dr. O'Bryan's mental RFC assessment, even if interpreted as an assessment of specific mental functional limitations, is still consistent with the ALJ's finding that Plaintiff could return to past relevant work as a truck driver even if the ALJ did not specifically adopt Dr. O'Bryan's assessment in his RFC finding. Plaintiff's past relevant work as a truck driver is classified as

9

unskilled work, with a specific vocational preparation of 2[1], which is consistent with Dr. O'Bryan's assessment that Plaintiff could do detailed work; had limited but adequate concentration, persistence, and pace; and could adapt to moderate levels of stress and change (Tr. 15, 28, 219). Further, Plaintiff did not indicate he stopped working as a truck driver due to any mental problems (Tr. 27, 115). As the ALJ noted, Plaintiff's other statements in the record indicated Plaintiff's ability to return to his past work as a truck driver was limited at least in part because his driver's license was revoked due to a DUI (Tr. 15, 199).

I agree with the Commissioner that even though the ALJ did not adopt Dr. O'Bryan's mental RFC assessment in his RFC finding, this is at most harmless error in light of the fact that the ALJ found Plaintiff could return to unskilled work. See Higgs v. Bowen, 880 F.2d 860, 864 (6th Cir. 1988); see also N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). It would be a waste of judicial and administrative resources for the ALJ to adopt into his RFC finding an assessment that identifies no specific functional limitations and says only that Plaintiff could do detailed work, had adequate concentration, persistence, and pace, and could adapt to moderate changes and stress, when the ALJ already found Plaintiff could return to past relevant unskilled work that is well within this assessed level of functioning (Tr. 15, 28, 219).

---

[1] The specific vocational preparation refers to the amount of time required to learn a work technique, with level 2 requiring a preparation period beyond a short demonstration up to and including one month. See Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (G.P.O.) (Doc. 12, Defendant's Brief, p. 5).

Plaintiff's suggestion that the ALJ's RFC finding did not encompass Dr. O'Bryan's assessment because Dr. O'Bryan found "moderate" limitations in his mental RFC appears to be a reference to the notations Dr. O'Bryan made in section I of his assessment forms (Tr. 217-18), (Doc. 10, Plaintiff's Brief at 7-8). To the extent Plaintiff may be suggesting those notations constituted Dr. O'Bryan's RFC assessment and should be adopted as limitations, such a suggestion is not supported. The evidence of record does not support any significant mental limitations. The notations in section I of the form Dr. O'Bryan completed does not represent Dr. O'Bryan's assessment of Plaintiff's RFC; rather, a claimant's RFC is recorded in section III of the form. See Program Operations Manual System ("POMS") DI 24510.060(B)(2), (4). For the ALJ to also use the notations in section I of the mental RFC form as an assessment of Plaintiff's RFC or to determine Plaintiff's ability to return to his past relevant work would have been inappropriate and inconsistent with the instructions in the POMS.

Although the POMS does not have the force of law, the Commissioner's interpretation of his own form in the POMS is entitled to deference and respect. See, e.g., Washington State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003). Plaintiff failed to show the Commissioner's interpretation of the mental RFC form is incorrect or that the ALJ was required to include in his RFC summary conclusions that did not reflect an assessment of Plaintiff's limitations. The ALJ did not need to discuss or adopt the summary conclusions in section I of the form Dr. O'Bryan completed, and the ALJ's finding that Plaintiff could return to his past relevant unskilled work is consistent with Dr. O'Bryan's assessment in section III of the form that Plaintiff could do detailed work; had limited but adequate concentration, persistence, and pace; and could adapt to moderate levels of stress and change (Tr. 15, 219).

11

Plaintiff relies on two out-of-circuit, district court cases to suggest the ALJ should have adopted Dr. O'Bryan's RFC assessment or his summary conclusions in section I of the mental RFC form. These cases are non-binding and they are also distinguishable. The court in Guyton v. Apfel, 20 F.Supp.2d 156, 164 (D. Mass. 1998), directed remand because the ALJ, in discussing the claimant's alleged mental impairment, adopted only one conclusion from the consultative examining psychologist, while ignoring the examining psychologist's other diagnoses and the agency's PRT finding indicating the claimant had two mental impairments the ALJ did not address in his opinion. Id. at 165. By contrast, the ALJ here thoroughly considered Mr. Caye's consultative psychological evaluation and opinion as well as Plaintiff's mental health treatment reflected in Dr. Chandler's records in assessing Plaintiff's mental impairment, and the ALJ made his own PRT finding based on his own review of the evidence (Tr. 13-14). The ALJ's decision also shows he considered the mental impairments of anxiety and alcohol abuse in remission identified in Dr. O'Bryan's PRT finding (Tr. 13-15, 208, 211). In Guyton, remand was also required because it was unclear how the claimant's mental impairment impacted the ALJ's later finding that Plaintiff could do other work based on the Medical-Vocational Guidelines. In contrast with Guyton, Plaintiff here fails to show how Dr. O'Bryan's mental RFC assessment–that Plaintiff could do detailed work, had limited but adequate concentration, persistence, and pace, and could adapt to moderate levels of stress and change–even if fully adopted, is in any way inconsistent with the ALJ's finding that Plaintiff could return to his past relevant unskilled work (Tr. 15, 219).

Plaintiff also relies on Williams v. Apfel, 98 F.Supp.2d 625, 632 (E.D. Pa. 2000) (Doc. 10, Plaintiff's Brief at 9-10). The court in Williams, having already established a basis for remand for other reasons, also determined an ALJ erred in ignoring a PRT finding from a state

12

agency physician indicating the claimant "often" had deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner in determining whether the claimant could do other work at step five of the sequential evaluation. Id. By contrast, the PRT finding from Dr. O'Bryan does not indicate Plaintiff "often" had deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (Tr. 203-16). At most, Dr. O'Bryan checked off moderate difficulties in concentration, persistence, or pace in his PRT finding; Dr. O'Bryan himself later clarified in his mental RFC assessment that Plaintiff had "limited, but adequate" concentration, persistence, and pace (Tr. 219). In Williams, the conclusions in the ignored PRT finding potentially conflicted with the ALJ's finding that the claimant could do other work. On the other hand, Plaintiff in this case fails to show how any of the conclusions in Dr. O'Bryan's PRT finding or mental RFC are inconsistent with the ALJ's finding that Plaintiff could return to his past relevant unskilled work (Tr. 15).

I conclude The ALJ properly considered Plaintiff's anxiety in determining it was not a severe impairment and in determining its impact on Plaintiff's ability to work at subsequent steps of the sequential evaluation (Tr. 12-15). As the ALJ discussed, Plaintiff's treatment records show only that Plaintiff's treating physician prescribed medication for anxiety on three occasions and a consultative psychological evaluation showed generally unremarkable mental status testing, with any restrictions attributed to an altered state due to medication use and possible abuse at the time of the evaluation (Tr. 13, 15, 196, 198-201, 222-23). Plaintiff's reliance on the forms Dr. O'Bryan completed is misplaced because Dr. O'Bryan ultimately assessed Plaintiff with a mental RFC consistent with the ALJ's finding that Plaintiff could return to past relevant work that has been classified as unskilled work (Tr. 15, 219).

13

The Credibility Determination:

Finally, plaintiff argues the Commissioner's credibility determination is not supported by substantial evidence because it does not comply with SSR 96-7p. However, as the Commissioner argues, when a claimant alleges disability based on subjective complaints, he must present objective medical evidence of an underlying medical condition. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); 20 C.F.R. §§ 404.1529, 416.929. If a medically determinable condition exists, the adjudicator then must decide if the objective medical evidence confirms the severity of the alleged symptoms arising from the condition or if the condition is of such severity that it could reasonably be expected to give rise to the alleged symptoms. See Walters, 127 F.3d at 531 ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."); 20 C.F.R. §§ 404.1529, 416.929.

Substantial evidence supports the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his back pain and mental symptoms related to his anxiety were not credible (Tr. 14-15). Plaintiff failed to provide objective medical evidence confirming the severity of his alleged back pain and mental symptoms, and the record as a whole does not indicate that his conditions were of disabling severity. See 20 C.F.R. §§ 404.1529(c)(2)-(4); Walters, 127 F.3d at 531-32. As the ALJ discussed, Plaintiff's consultative exam did not support Plaintiff's allegations of disabling back pain (Tr. 15, 185). While this exam showed slightly reduced range of motion in his lumbar spine, it also showed Plaintiff had no spasm or asymmetry in his spine, could lift on his toes and heels briefly, could one-foot stand without any evidence of weakness, could perform tandem steps, had a negative Romberg exam,

used no assistive devices, and could move from a seated to standing position without any difficulty (Tr. 12-13, 185). As the ALJ pointed out, state agency reviewing physician Dr. Reeta Misra reviewed this exam and Plaintiff's other medical records, including an August 2007 lumbar MRI showing generally mild changes and treatment notes showing Dr. Chandler treated Plaintiff's back pain only with medication, and concluded Plaintiff could do a full range of medium work (Tr. 13, 174-80, 182, 185-94).

I conclude the evidence of record also fails to support Plaintiff's allegations of disabling mental symptoms. Plaintiff's treatment notes show only treatment with medication for his anxiety, his consultative psychological exam shows generally unremarkable mental status testing. Dr. O'Bryan's assessments, which Plaintiff relies on, ultimately conclude Plaintiff could do detailed work, had limited but adequate concentration, persistence, and pace, and could adapt to moderate levels of stress and change, fail to support any significant mental limitations (Tr. 13-15, 174-75, 196, 198-201, 219, 222-23). The ALJ also noted the record indicated substance abuse caused most, if not all, of the minor mental limitations Mr. Caye assessed (Tr. 15, 200-01).

Plaintiff argues the only evidence indicating any mental limitations are from substance abuse come from Mr. Caye's own "suspicion." (Doc. 10, Plaintiff's Brief at 12). However, Plaintiff himself reported to Mr. Caye that his arrest history included two charges of public drunkenness and two DUIs, one occurring only one year prior to Mr. Caye's June 2009 exam (Tr. 198). Plaintiff reported his second DUI resulted in part from medication intoxication, which Mr. Caye noted along with the fact that Plaintiff appeared sedated during the exam and that Plaintiff had failed to bring his medications with him, despite already receiving at least one written request to bring his medications (Tr. 197-98). Mr. Caye assessed Plaintiff with some mild to

15

moderate mental limitations which he attributed to Plaintiff's medication use based on Plaintiff's altered state at the exam. Plaintiff failed to identify any side effects from any of his medications in response to questions specifically asking about side effects in the disability forms he completed, let alone suggest he experienced disabling side effects (Tr. 115, 118, 137 198).

Plaintiff argues the ALJ should have elicited testimony regarding his medications at the hearing (Doc. 10, Plaintiff's Brief at 13-14). Although an ALJ has a basic obligation to develop a full and fair record, the ALJ is not required to act as the claimant's counsel or produce evidence for the claimant. See Born v. Sec'y of Health and Human Servs., 923 F.2d 1168, 1172 (6th Cir. 1990); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 856 (6th Cir. 1986). Plaintiff's counsel elicited testimony from Plaintiff regarding his current daily activities, which include using a riding mower, his medications, and his recent work attempts, at no time did Plaintiff complain of side effects (Tr. 24-28). Plaintiff did not indicate any side effects prevented him from operating heavy machinery such as the riding mower he used (Tr. 24-25). When asked about his medications, Plaintiff did not complain of any side effects, instead noting his drinking interfered with his medication and "caus[ed] problems," so he quit drinking (Tr. 26). When asked about recent work attempts, Plaintiff indicated one attempt was unsuccessful because of physical limitations, again failing to mention any side effects from medication that restricted his functioning, while noting he continued to work on people's lawn mowers (Tr. 27-28). The ALJ did not restrict any line of questioning from Plaintiff's counsel, and there was nothing in Plaintiff's testimony or in the other evidence of record to indicate Plaintiff's medications caused disabling side effects when used properly.

Plaintiff contends his statements concerning his alleged limitations due to pain and other symptoms were "ignored." (Doc. 10, Plaintiff's Brief at 14). I disagree. As shown above, the

16

ALJ specifically addressed Plaintiff's statements concerning his allegations of disabling back pain[2] and mental symptoms (Tr. 14-15). The ALJ did not ignore any statements concerning disabling side effects because Plaintiff made no statements indicating he experienced side effects despite the opportunities given to do so in his disability reports, to any physician, or to his counsel when asked at the hearing about his daily activities, his medications, and the reasons he was unable to work.

I conclude Plaintiff failed to meet his burden proving his back pain, mental condition, or medications caused disabling limitations. See 20 C.F.R. §§ 404.1529(a), 416.929(a); Walters, 127 F.3d at 531. As shown above and in the ALJ's discussion of the evidence of record, substantial evidence supports the ALJ's credibility finding and his assessment of Plaintiff's RFC. "Credibility determinations with respect to subjective complaints of pain rest with the ALJ," Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652 (6th Cir.2009) (internal quotation marks and alterations omitted), and "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," Walters, 127 F.3d at 531. The burden of proving disability always rests with Plaintiff. See 20 C.F.R. §§ 404.1512, 416.912; Foster, 279

---

[2] Plaintiff's contention that the ALJ ignored his testimony alleging restrictions on sitting, standing, and walking due to back pain inaccurately describes the ALJ's decision. Pl.'s Br. at 14. While the ALJ may not have discussed Plaintiff's complaints regarding the particular restrictions he alleged due to back pain with as much specificity as Plaintiff may wish, the ALJ still expressly considered Plaintiff's allegations that he was unable to work due to chronic back pain (Tr. 14-15). It would be a waste of administrative and judicial resources to remand simply to have the ALJ describe Plaintiff's complaints related to his back pain in more detail, where the ALJ already expressly considered Plaintiff's allegations of disabling back pain (Tr. 14-15). See Higgs, 880 F.2d at 864; see also Wyman-Gordon Co., 394 U.S. at 766 n.6.

F.3d at 353. The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. See Richardson v. Perales, 402 U.S. 389, 399 (1971); Walters, 127 F.3d at 528; Mullins v. Sec'y of Health & Human Servs., 836 F.2d 980, 984 (6th Cir. 1987). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where it is supported by substantial evidence in the record as a whole. See Warner, 375 F.3d at 390. Here, I conclude substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

<u>Conclusion</u>

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

    (1)  The plaintiff's motion for summary judgment (Doc. 9) be DENIED.

    (2)  The defendant's motion for summary judgment (Doc. 11) be GRANTED.

    (3)  The case be DISMISSED. [3]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).